## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| Stephon Woodley, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Case No. 18 CV 50050 |
| v. | ) | |
| | ) | Magistrate Judge Iain D. Johnston |
| John Baldwin, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |

## REPORT AND RECOMMENDATION

It is this Court's Report and Recommendation that Plaintiff's Motion for a Preliminary Injunction (Dkt. 6) be granted as modified. Any objection to this Report and Recommendation shall be filed by June 28, 2018. Failure to object may constitute a waiver of objections on appeal. *See Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260 (7th Cir. 1989). A telephonic status hearing is set for July 9, 2018 at 10:00 a.m. By July 6, 2018, counsel shall provide direct-dial telephone numbers to the Court's operations specialist, who will initiate the call.

## I. BACKGROUND

On February 9, 2018, Plaintiff, Stephon Woodley, an inmate at Dixon Correctional Center, filed a complaint against the Illinois Department of Corrections ("IDOC") Defendants,[1] Wexford Health Sources ("Wexford") and five unidentified John Does for their alleged deliberate indifference to his serious medical need and discrimination relating to accommodations for his Stargardt disease, a hereditary degenerative eye disease causing progressive vision loss that has left Plaintiff legally blind. Dkt. 1. Specifically, Plaintiff has claims under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA"), the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, and the Eighth Amendment.

On March 14, 2018, Plaintiff filed a Motion for a Preliminary Injunction ("Motion") against Defendant John Baldwin. Dkts. 6-7. Specifically, Plaintiff requests that Defendant Baldwin provide him with the following visual aids:
(1) a portable digital magnifier for reading;
(2) a bright task light for his cell;
(3) a monocular scope for distance vision; and

---

[1] Namely John Baldwin (director of the IDOC), the IDOC, Patrick Keane (ADA Coordinator for the IDOC) and John Varga (warden of Dixon Correctional Center).

(4) a folding cane to navigate the prison.

Plaintiff argues that these four items were specifically prescribed by a specialist to assist him with his activities of daily living and so he can continue to enroll in education courses and programs at Dixon Correctional Center.

The Court held a hearing on Plaintiff's Motion on April 23, 2018.[2] Plaintiff, the IDOC Defendants and Wexford submitted briefs and exhibits before the hearing. *See* Dkt. 42 (Plaintiff's Brief and Exhibits); Dkts. 43-44, 54, 57 (IDOC's Brief and Exhibits); Dkts. 47, 53 (Wexford's Brief and Exhibits). All exhibits were admitted into evidence. Plaintiff and Amber Allen, Dixon's Healthcare Unit Administrator, testified at the hearing. The facts presented at the hearing were largely not in dispute. The Court found the testimony of Plaintiff and Amber Allen both credible and reliable.

At the outset of the hearing, counsel for the IDOC Defendants informed the Court that they had ultimately approved Plaintiff's request for a folding cane. Counsel for the IDOC Defendants admitted that there were other inmates at Dixon Correctional Center using this type of folding cane, so it did not need to be approved for security purposes. Amber Allen confirmed that Plaintiff should have his cane within the week. Amber Allen further explained that she was unaware Plaintiff had been denied a cane until it was recently brought to her attention.[3]

As to the remaining three items, the IDOC Defendants object to issuing them to Plaintiff based on a security concern. The IDOC Defendants state that these items have not been approved by Dixon's security unit for distribution because the particular items have not been inspected. However, the items have not been inspected because Wexford has refused to purchase them for inspection without prior security approval. This is a classic Catch-22[4] that resulted in a federal lawsuit and a preliminary injunction hearing before any reasonable action would be taken – including the acquisition of a folding cane that Plaintiff first requested back in 2015 and that other inmates have been using at Dixon Correctional Center for years.

At the hearing, the following evidence was presented. Plaintiff is approximately 38-years-old and incarcerated at Dixon Correctional Center. Plaintiff is currently scheduled for parole on September 28, 2018.

---

[2] Although Plaintiff did not seek specific relief from Wexford in the Motion, counsel for Wexford was present at and participated in the hearing. *See* Fed. R. Civ. P. 65(d)(2) (providing that the injunction order binds parties and their officers, agents and employees if they receive actual notice).

[3] Counsel for the IDOC Defendants, Edward Brener, and Amber Allen are commended for their prompt action in this regard.

[4] *Davis v. Humphreys*, 747 F.3d 497, 498 (7th Cir. 2014) (summarizing Joseph Heller's *Catch-22*).

Plaintiff was initially diagnosed with Stargardt disease when he was 11 years old, in approximately 1991. Plaintiff started losing his vision in his mid-20s, in approximately 2005, and his vision progressively got worse from there. When Plaintiff first entered the IDOC custody in 2002, a prison optometrist diagnosed Plaintiff as having Stargardt disease and recommended a plastic magnifier and good lighting so Plaintiff could read. Plaintiff's Exhibit 1, Dkt. 42-1. In 2010, prison optometrist Dr. David Hicks prescribed Plaintiff a more powerful glass magnifier because his vision had deteriorated to the point that he was considered legally blind. Plaintiff's Exhibit 2, Dkt. 42-1.

In 2011, Plaintiff obtained his General Education Diploma, and thereafter in 2012, he registered for college courses through Dixon Correctional Center. Plaintiff has also been working in Dixon Correctional Center's dietary division since December 2011, rolling silverware into napkins. IDOC's Exhibit 1, Dkt. 44-1.

In June 2012, Dr. Hicks concluded that Plaintiff's vision loss had further deteriorated and could no longer be accommodated by a glass magnifier. *See* IDOC's Answer at 6, Dkt. 40. As a result, the IDOC ADA Coordinator and the Warden of Dixon Correctional Center allowed Plaintiff to purchase a more powerful magnifier, namely an "Aukey Portable Video Magnifier/Rechargeable battery and cord." Plaintiff's Exhibit 4, Dkt. 42-1. Plaintiff was able to read and study his textbooks with the assistance of his Aukey portable video magnifier.

In 2014, Plaintiff's Aukey portable video magnifier broke. The device was replaced for Plaintiff at no charge in December 2014. *See* IDOC's Answer at 7, Dkt. 40; Plaintiff's Exhibit 25, Dkt. 42-1.

Plaintiff continued to take college courses through 2015, until academic courses were no longer available at Dixon Correctional Center due to the State of Illinois' budget impasse. However, Plaintiff was able to earn his Real Estate certificate during this time because correspondence courses were still offered during the budget impasse. Correspondence courses are not offered through the IDOC, but an inmate could sign up directly with the program.

In July 2014, Dr. Hicks referred Plaintiff to see an ophthalmologist to determine what low vision aids Plaintiff required to improve his quality of life. Plaintiff's Exhibit 7, Dkt. 42-1. Plaintiff was referred to ophthalmologist Dr. J. Friedrichs, who in turn referred Plaintiff to a retina specialist. *Id.* This referral was ultimately approved by Dixon's medical director and Wexford in August 2017. *Id*; Plaintiff's Exhibit 8, Dkt. 42-1. Plaintiff was seen by a retina specialist in September 2014, who referred him to another specialist specifically for an evaluation for low vision aids. Plaintiff's Exhibit 9, Dkt. 42-1. This referral was approved by Dixon's medical director and Wexford in September 2014. Plaintiff's

Exhibit 10, Dkt. 42-1. Plaintiff was seen by the requested specialist, who in turn referred Plaintiff to a vision rehabilitation specialist. This referral was ultimately approved by Dixon's medical director and Wexford in January 2015. Plaintiff's Exhibit 12, Dkt. 42-1.

In February 2015, Plaintiff was evaluated by Dr. Joan Stelmack, an optometrist specializing in low vision rehabilitation. Plaintiff's Exhibit 16, Dkt. 42-1. Based on this evaluation, Dr. Stelmack prescribed[5] the following low vision aids for Plaintiff: (1) a monocular for distance spot checking; (2) an Amigo HD portable desktop magnifier for reading, noting that Plaintiff's current Aukey portable video magnifier had too small of a screen to allow Plaintiff to read and write; (3) a folding cane for mobility; and (4) a bright task light. Plaintiff's Exhibit 16, Dkt. 42-1. Dr. Stelmack informed Dixon Correctional Center that she planned to fax her specific recommendations regarding the low vision aids as soon as she could get the model numbers and prices for the items. Plaintiff's Exhibit 17, Dkt. 42-1. Dr. Stelmack's prescription for the four visual aids was approved by Dixon's medical director in March 2015. *Id.*

However, on March 27, 2015, Wexford denied the request for a folding cane, a task light and a monocular because these three items needed to be inspected by the warden or Dixon's security unit to ensure they would be acceptable at the prison.[6] Plaintiff's Exhibit 18, Dkt. 42-1. On December 11, 2016, Dixon's security unit determined that it was unable to inspect and approve the items prior to being purchased. IDOC's Exhibit 9 at 16, Dkt. 54; *see also* Plaintiff's Exhibit 29, Dkt. 42-1. Accordingly, on December 16, 2015, Wexford denied all four of the requested visual aids because Dixon's security unit had "denied" the items. Plaintiff's Exhibit 19, Dkt. 42-1. Wexford refused to purchase the items for a security inspection, despite evidence from Dixon's medical director that the items could be returned if Dixon's security unit did not approve them. *See* IDOC's Exhibit 11 at 18, Dkt. 56.

At the hearing, Amber Allen testified that both she and Dixon's medical director suggested that Wexford purchase the items for a security inspection, noting that the items could be returned. However, Wexford still denied their request. Amber Allen testified that although Dixon's security unit never inspected the Amigo HD portable desktop magnifier that Dr. Stelmack prescribed, after reviewing the item online, the security unit noted the following concerns: (1) the cord used to charge the electronic magnifier could also be used to charge a cellular telephone; (2) the magnifier was larger than the Aukey portable video magnifier Plaintiff

---

[5] The IDOC Defendants argue that the visual aids were not prescribed by Dr. Stelmack, but instead were only recommendations. As stated later in this Order, the Court finds that based on the records and the evidence presented at the hearing, Dr. Stelmack prescribed all four of the visual aids.

[6] Wexford did not mention the fourth item, namely an Amigo HD portable desktop magnifier.

previously used; and (3) the glass on the magnifier could be broken or mishandled. Amber Allen further testified that she believed all four items were grouped together and ultimately denied based on the noted security concerns for the Amigo HD portable desktop magnifier.

In response to the denial of his visual aids, Plaintiff filed a grievance. Plaintiff's Exhibit 20, Dkt. 42-1. In March 2016, Dixon's ADA Coordinator responded to Plaintiff's grievance, noting that Dixon's security unit denied the requested items because they were unable to perform a security inspection without purchasing them. Plaintiff's Exhibit 21, Dkt. 42-1. The ADA Coordinator recommended, and Dixon's Warden agreed, that the visual aids should be reviewed for security concerns, noting that the items were likely returnable if they were not approved. *Id.* However, no such security inspection ever occurred.

In July 2016, Plaintiff's Aukey portable video magnifier was broken during a shakedown of his cell. However, Plaintiff did not receive a replacement and instead received a plastic sheet magnifier in October 2016. Plaintiff's Exhibit 23, Dkt. 42-1. In response, Plaintiff filed a grievance to complain that he had not received a replacement Aukey portable video magnifier for the one that was broken or any other visual aids that were prescribed by Dr. Stelmack. Plaintiff's Exhibit 24, Dkt. 42-1. In January 2017, Plaintiff's grievance was ultimately denied because the ADA Coordinator was unable to procure any type of electronic magnifier for Plaintiff due to cost. Plaintiff's Exhibit 25, Dkt. 42-1.

In February 2017, Plaintiff was examined by the prison optometrist, Dr. Timothy Fahy, who "highly recommended" low vision aids for Plaintiff. Plaintiff's Exhibit 27, Dkt. 42-1. In March 2017, after Plaintiff's renewed requests for the low vision aids previously prescribed, he received approval for an ambulatory aid and a classic magnifying glass that contained a small illuminating light attached. Plaintiff's Exhibit 28, Dkt. 42-1.

In September 2017, Plaintiff was issued the classic magnifying glass with a 6x magnification and a small illuminating light attached. Plaintiff's Exhibit 30, Dkt. 42-1; IDOC's Exhibit 9 at 17, Dkt. 54. In December 2017, Plaintiff was seen by the prison optometrist, Dr. Lundford, who noted that Plaintiff's 6x magnifier was insufficient and referred him to see a low vision specialist. Plaintiff's Exhibit 31, Dkt. 42-1. This referral and an additional referral to see a vision rehabilitation specialist were approved by Wexford and Dixon's medical director in January 2018. Plaintiff's Exhibit 32, Dkt. 42-1; IDOC's Exhibit 9 at 10, Dkt. 54. As a result of this referral, in March 2018, Plaintiff was referred for additional testing, namely an electroretinography to further define his diagnosis. Wexford's Exhibit 2 at 20, Dkt. 53-1.

At the time of the hearing, Plaintiff had the following accommodations for his lack of vision: (1) a conventional magnifying glass with a 6x magnification and a small illuminating light attached, which, as stated above, the optometrist found to be insufficient; and (2) an ambulatory aid in the form of an inmate that assists him around the prison. Plaintiff argues that both of these measures are vastly insufficient for his disability.

At the conclusion of the hearing, Plaintiff narrowed the relief he was seeking with the preliminary injunction. Instead of asking for all three visual aids outright, Plaintiff instead asked that the IDOC Defendants be ordered to conduct a security inspection on these items. Plaintiff further testified that although he was prescribed a larger Amigo HD portable desktop magnifier by Dr. Stelmack, he would accept the Aukey portable video magnifier he was previously allowed to use.

## II. DISCUSSION

Before the Court is Plaintiff's Motion for a Preliminary Injunction. To obtain a preliminary injunction, plaintiff must show that: (1) he has some likelihood of succeeding on the merits; (2) he will suffer irreparable harm before the final resolution of his claims; and (3) traditional legal remedies would be inadequate. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). If these three factors are shown, the court must then balance the harm to each party and to the public interest from granting or denying the injunction. *See id.*

Plaintiff has requested that the IDOC Defendants[7] be compelled to act, namely be ordered to provide a security inspection of the visual aids. Accordingly, the Court has construed Plaintiff's request as one for a mandatory preliminary injunction. Mandatory injunctions require the court to command the defendant to take affirmative action, and therefore, should be "cautiously viewed and sparingly issued." *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978).

Furthermore, courts generally will not interfere in matters of prison administration. Accordingly, the Prison Litigation Reform Act ("PLRA") specifically states that in considering the need for preliminary injunctive relief in a correctional setting, "[t]he court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief[.]" 18 U.S.C. § 3626(a)(2). The PLRA further instructs that "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." *Id.*

---

[7] Although Plaintiff's Motion specifically requests relief from the Director of the IDOC, John Baldwin, Federal Rule of Civil Procedure 65(d)(2) also binds his officers, agents, employees and those in active concert or participation with him.

**Likelihood of Success on the Merits**

Plaintiff must show he "has a better than negligible chance of success on the merits of at least one of [his] claims." *Girl Scouts*, 549 F.3d at 1096 (internal quotation marks and citations omitted). Plaintiff brings claims under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA"),[8] the Rehabilitation Act ("RA"), 29 U.S.C. § 701 *et seq*., and the Eighth Amendment.

To prove a violation of Title II of the ADA,[9] plaintiff must establish: (1) that he is a qualified individual with a disability; (2) that he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity; and (3) that the denial or discrimination was due to his disability. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015); 42 U.S.C. § 12132. "After these requirements are established, the burden shifts to the [D]efendant to show that the accommodation[s] provided [were] either effective, or that the accommodation[s] sought and not provided would have resulted in a fundamental alteration of the [programs, activities, or services], or an undue financial or administrative burden." *Holmes v. Godinez*, 311 F.R.D. 177, 226 (N.D. Ill. 2015) (citations and internal quotations marks omitted).

The IDOC Defendants do not dispute that Plaintiff is legally blind and has a disability within the meaning of the ADA. *See* IDOC's Answer at 5-6, 27, Dkt. 40. They also do not dispute that the IDOC is a public entity subject to the requirements of the ADA. *Id.* at 27. However, the IDOC Defendants argue that Plaintiff has not been denied the benefit of any services, programs, or activities at Dixon Correctional Center. The IDOC Defendants point out that Plaintiff was provided a sheet magnifier, a magnifying glass with an illuminating light and an ambulatory aid, and that such were reasonable accommodations to allow him to participate in the programs and services he wishes to enroll in and to safely move about the prison.

The IDOC Defendants point out that "the type of accommodation that will be enough to satisfy the [ADA's] reasonableness requirement must be judged in light of

---

[8] The IDOC Defendants make an argument that Plaintiff's claim of discrimination in hiring fails under Title I of the ADA because Plaintiff has not exhausted his claims. *See* IDOC' Motion to Dismiss, Dkt. 38-1; IDOC's Brief, Dkt. 43. Nevertheless, at the hearing, Plaintiff stated that he was not proceeding on the failure to hire claim as it related to Dixon Correctional Industries. Accordingly, the Court will not address that claim here.

[9] The RA is functionally identical to the ADA, with the added requirement that the defendant receive federal funding, which the IDOC does not dispute. *Wagoner*, 778 F.3d at 592; IDOC Defendant's Answer at 30, Dkt. 40. Accordingly, the Court will only review Plaintiff's claims as outlined in the ADA.

the overall institutional requirements." *Love v. Westville Correctional Center*, 103 F.3d 558, 561 (7th Cir. 1996). This Court agrees that security is a great concern for a correctional facility. However, the *Love* court went on to state that "[s]ecurity concerns, safety concerns, and administrative exigencies would all be important considerations to take into account. On this record, however, given Westville's failure to present direct evidence at the trial supporting this explanation for its treatment of Love, there is nothing to refute Love's showing that he was qualified-- and his implicit showing that the accommodations required were reasonably within the institution's capability." *Id.*

Similarly in the instant case, the IDOC Defendants have failed to provide a valid security concern for not providing the visual aids Plaintiff was prescribed to accommodate his low vision. In fact, the IDOC Defendants have failed to provide any sort of security inspection on these items. Moreover, Amber Allen, who is not a member of Dixon's security unit, testified that the only security concern the security unit informally identified after viewing the Amigo HD portable desktop magnifier online was that: (1) the cord used to charge the electronic magnifier could also be used to charge a cellular telephone; (2) the magnifier was larger than the Aukey portable video magnifier Plaintiff previously used; and (3) the glass on the magnifier could be broken or mishandled.

Although these may have been the expressed security concerns, the evidence revealed that Plaintiff was previously approved an Aukey portable video magnifier that had a charging cord that would presumably pose the same security concern. Additionally, Plaintiff was in possession of a glass magnifier, which although not as large as an electronic magnifier, would presumably pose the same security concern if broken.

As for the task light, the evidence at the hearing revealed that inmates were allowed to purchase lamps in the commissary for their cells, but they were not as bright. Accordingly, it would seem to pose little security concern. As for the monocular scope, there was no discussion about the security risks, other than the fact that each item needed to be inspected individually. Therefore, purchasing these items to determine if they would be allowed for Plaintiff's use seems to be the logical next step, and it is unfortunate that such an inspection has not already occurred.

Instead of providing Plaintiff with the prescribed visual aids, he was provided a sheet magnifier, a magnifying glass with an illuminating light and an ambulatory aid. This Court is not persuaded that the IDOC Defendants have provided Plaintiff with reasonable accommodations for his low vision. *See* 28 CFR § 35.160(b)(2) ("In determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities. In order to be effective, auxiliary aids and services must be provided in accessible

formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability.").

As to the magnifiers, the IDOC Defendants admitted that back in June 2012, Dr. Hicks determined that Plaintiff's vision loss had deteriorated to the point that he could no longer be accommodated by a glass magnifier. *See* IDOC's Answer at 6, Dkt. 40. In response, Plaintiff was allowed to purchase an Aukey portable video magnifier. Accordingly, it is disingenuous for the IDOC Defendants to now claim that they reasonably accommodated his vision loss through the use of a traditional magnifying glass, when the record reveals that such measures were insufficient even back in 2012. Plaintiff's vision has only deteriorated since then. Furthermore, Plaintiff testified that the magnifying glass only had a two inch lens, which made it difficult to read more than a few letters at a time.

As for the ambulatory aid, the evidence revealed that the primary purpose of this accommodation was to assist Plaintiff is navigating the prison. Even for this specific task, Plaintiff testified that this is an insufficient accommodation without the other requested visual aids, namely a monocular scope for distance vision and folding cane to account for uneven surfaces and objects. Furthermore, Plaintiff testified that in his cell, where he has limited lighting and does not have the use of an ambulatory aid, he continuously fumbles with his belongings and bang into objects. This was supported by the medical records describing injuries to his shins. At the hearing, Plaintiff also showed the Court the extensive bruising on his shins caused by bumping into objects in his cell and elsewhere.

Plaintiff has also attempted to use his ambulatory aid to assist him with reading, but to no avail. Plaintiff's college course reading work is too complicated to benefit from someone else reading the course work to him, especially when it comes to digesting complex ideas or understanding charts and diagrams. Plaintiff also lacks the confidentiality he should be provided when he needs his ambulatory aid or other inmates to read his medical records or personal correspondences. Based on this evidence, the IDOC Defendants have not shown that the accommodations they provided were effective or that the requested visual aids would have resulted in an undue burden. Accordingly, Plaintiff has set forth sufficient evidence to show that he has a better than negligible chance of proving he cannot effectively participate in the programs and services offered at Dixon Correctional Center.

Plaintiff further alleges that Defendants were deliberately indifferent to his serious medical needs. To establish a violation of the Eighth Amendment, a plaintiff must show: (1) he suffered from an objectively serious medical condition; and (2) prison officials were deliberately indifferent to that condition such that they "actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994)).

Again, the IDOC Defendants do not dispute that Plaintiff suffered from a serious medical need, namely Stargard disease. *See* IDOC's Motion to Dismiss at 4, Dkt. 38-1; *see also* Wexford's Brief at 4, Dkt. 47. However, the IDOC Defendants believe Plaintiff has failed to meet the second prong, because Plaintiff has received substantial medical care and treatment for his vision problems, and Plaintiff's complaint that such care is inadequate fails to state a claim for deliberate indifference. IDOC's Brief at 6, Dkt. 43.

"The receipt of some medical care does not automatically defeat a claim of deliberate indifference." *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (internal quotation marks and citation omitted). "Deliberate indifference may occur where a prison official, having knowledge of a significant risk to inmate health or safety… acts in a manner contrary to the recommendation of specialists." *Id.* (citing *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011)).

The IDOC Defendants take issue with whether Dr. Stelmach's assessment that Plaintiff needed the visual aids was a recommendation or a prescription, such that her list of visual aids was only a suggestion to the IDOC, specifically Dixon Correctional Center, and they were free to decide what to do in response. The IDOC Defendants maintains that Plaintiff's Exhibit 15, Dkt. 42-1, listing Dr. Stelmach's "recommendations," was the only record faxed to Dixon's Health Care Unit. The remaining records in Dr. Stelmach's medical file, which specifically referred to the four items as prescriptions, were never provided. *Compare* Plaintiff's Exhibit 15, Dkt. 42-1 (referencing "attached recommendations") *with* Plaintiff's Exhibit 16, Dkt. 42-1 (listing "Prescription of Assistive Devices"). Amber Allen testified that a prescription for visual aids would indicate what is medically necessary for Plaintiff. On the other hand, a recommendation would only be something beneficial to Plaintiff, but would not be considered the only course of treatment.

The Court is not persuaded by this argument. Even the records that were faxed by Dr. Stelmach stated that Plaintiff "needs low vision [ ] devices to compensate for vision loss." Plaintiff's Exhibit 15, Dkt. 42-1. Dr. Stelmach's "recommendation" was in response to Wexford and Dixon's medical director sending Plaintiff to this specific specialist to determine what low vision aids he required. Even more, Dixon's medical director approved all four of the "recommended" items. Plaintiff's Exhibit 17, Dkt. 42-1. Based on this evidence, there is no dispute that Dr. Stelmach prescribed the items. Therefore, the evidence suggests that both the IDOC Defendants and Wexford acted in a manner contrary to the recommendation of Dr. Stelmach. *See Foster v. Ghosh*, 4 F. Supp. 3d 974 (N.D. Ill. 2013) (granting injunctive relief and ordering that plaintiff be evaluated by an ophthalmologist to determine how to treat his cataracts where he was denied a referral for approximately five years, despite the use of ineffective treatment and the plaintiff's worsening symptoms).

Nevertheless, Wexford argues that its hands were tied because it "attempted to provide the [prescribed] visual aids to Plaintiff, but security did not approve them." Wexford's Brief at 6, Dkt. 47. Instead, Wexford provided Plaintiff with alternative visual aids. *Id.* As stated above, this is not entirely accurate. First, Dixon's security unit did not approve the items because Wexford refused to purchase the items without prior security approval.

Second, the alternative visual aids were known to be ineffective, despite what Wexford claims. *See Arnett*, 658 F.3d at 752 (continuing a treatment known to be ineffective can also constitute deliberate indifference). Plaintiff has tried these alternative visual aids and he and other treaters have reported numerous times that they are insufficient. *See, e.g.,* Plaintiff's Exhibit 4, Dkt. 42-1; IDOC's Answer at 6, Dkt. 40 (June 2012: Dr. Hicks concluded that Plaintiff's vision loss had deteriorated again and could no longer be accommodated by a glass magnifier; Plaintiff's Exhibit 24, Dkt. 42-1 (November 2016: Plaintiff's grievance for receiving sheet magnifier instead of a reasonable accommodation to replace his Aukey portable video magnifier); Plaintiff's Exhibit 27, Dkt. 42-1 (February 2017: Dr. Fahy highly recommended low vision aids in 2017); Plaintiff's Exhibit 31, Dkt. 42-1 (December 2017: Dr. Lundford determined that Plaintiff's 6x was insufficient and referred him to a low vision specialist).

Wexford further notes that as recent as February 2018, it referred Plaintiff to another specialist to pinpoint his visual issues. *Id.* Yet, Wexford makes no mention that Plaintiff has already been through a six month waiting period in 2015 to see a specialist, who ultimately prescribed several effective visual aids that have not yet been properly approved or denied by Dixon's security unit. That Plaintiff is going through the same referral process again, for what the Court assumes will result in a similar prescription for visual aids, does not support Wexford's position. Plaintiff's medical records reveal that Defendants were well aware of his vision problems and his request for reasonable and effective accommodations. There appears to be no medical reason for denying the requested items. Accordingly, the Court finds that Plaintiff put forth sufficient evidence indicating that he "has a better than negligible chance of success on the merits" of either his ADA or deliberate indifference claims. *See Girl Scouts*, 549 F.3d at 1096.

**Irreparable Harm**

Plaintiff must show that he will likely suffer irreparable harm if the Court does not issue the requested preliminary injunction. *See Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008) (requiring plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction) (emphasis in original). "A harm is irreparable if it cannot be prevented or fully rectified by the final

judgment after trial." *Girl Scouts*, 549 F.3d at 1089 (internal quotation marks and citation omitted).

Plaintiff argues he will suffer irreparable harm because no remedy can undo his physical injuries or lost educational and programming opportunities. Plaintiff testified that he is injuring himself daily around the prison without the necessary visual aids and even an ambulatory aid does not prevent these injuries. Plaintiff further testified that he has had to strain his eyes to see without the assistance of the prescribed visual aids. He noted that at his recent medical appointment his retina was swollen from eye strain. Additionally, since his Aukey portable video magnifier broke in 2016, Plaintiff has been unable to register for any courses that rely on written materials or read his own medical records or personal correspondences.

The IDOC Defendants argue that Plaintiff's fear of future physical injuries is only speculative. This Court disagrees based on the undisputed evidence presented that Plaintiff exhibited extensive bruising on his shins from attempting to navigate the prison and his own cell. *See also* IDOC's Exhibit 11 at 30, Dkt. 56 (January 2017: medical visit noting bruises and scrapes on Plaintiff's shins); IDOC's Exhibit 11 at 31, Dkt. 56 (May 2017: medical visit where Plaintiff reported eye pain and headaches without the use of effective visual aids); IDOC's Exhibit 9 at 19, Dkt. 54 (February 2018: medical visit noting blurred vision and eye pain).

The IDOC Defendants further argue that Plaintiff has not shown an ability to complete any additional college courses before his September 23, 2018 release date, noting that there are waiting lists for numerous courses. While it is true that there are waiting lists, Plaintiff testified that when college courses resumed at Dixon Correctional Center in January 2018, Plaintiff enrolled in two courses, which start in June 2018, and he is on a waitlist for a third course. Accordingly, the Court finds that Plaintiff has shown he will likely suffer irreparable harm before the final resolution of his claims.

**No Adequate Remedy at Law**

Plaintiff must show that traditional legal remedies, namely money damages, would be inadequate. *Girl Scouts*, 549 F.3d at 1095. Plaintiff argues that monetary damages would be inadequate because without injunctive relief he is effectively prevented from reading any materials at the prison and from taking any courses that rely on written materials. He will also continue the injure himself while navigating his cell and the prison and suffer eye strain and headaches while attempting to see without the use of effective visual aids.

This Court is guided by the reasoning in *Foster*, in which the court similarly found no adequate remedy at law for the plaintiff with cataracts because his

"impaired vision makes him more susceptible to other injuries, such as tripping and falling, or even victimization by other inmates" and cataracts may lead to more serious health problems. *Foster*, 4 F. Supp. 3d at 983. In this case, Plaintiff's Stargardt disease is causing his vision to deteriorate over time so the need for visual aids will only become more important to his ability to function at Dixon Correctional Center. Therefore, the Court finds that Plaintiff has shown that traditional legal remedies are inadequate. Having satisfied the three threshold factors, the Court will next balance the interests at stake.

**Balance of Harms and Public Interest**

The Court must now compare "the potential irreparable harms faced by both parties to the suit--the irreparable harm risked by the moving party in the absence of a preliminary injunction against the irreparable harm risked by the nonmoving party if the preliminary injunction is granted." *Girl Scouts*, 549 F.3d at 1100. The Court must also consider whether issuing the requested preliminary injunction would be adverse to any public interest. *Id.*

Any burden on the IDOC Defendants relating to safety at the prison is alleviated by ordering the IDOC Defendants to complete a security inspection on these items. Dixon's security unit would ultimately decide whether to approve their use. For this reason, the Court also finds Plaintiff's request to be narrowly tailored, even more than it was when he first requested preliminary relief. At the hearing, Plaintiff modified his request to seek a security inspection of the three visual aid items, instead of requesting the items outright. The IDOC Defendants would be required to perform a security inspection on the three items, which they appear to have attempted back in December 2016. Such relief would not hinder the IDOC Defendant's ability to make administrative decisions about security at Dixon Correctional Center. *See* 18 U.S.C. § 3626(a)(2). It would merely require them to take the first step and determine whether there is any legitimate security issue. Thus, the Court finds that this is the least intrusive means necessary to correct the harm to Plaintiff. *See id.* The Court further finds that such relief satisfies Federal Rule of Civil Procedure 65(d)(1)'s specificity requirement. *See* Fed. R. Civ. P. 65(d)(1) (requiring specific terms and reasonable detail as to the acts required).

The IDOC presented no convincing evidence of a legitimate security concern for these three items that would justify refusing to conduct a security inspection. The Court only heard Amber Allen speculate as to what security concerns there may be. No one from Dixon's security unit testified at the hearing. Although the IDOC Defendants argue that the only reason the visual aids were not approved was due to a security concern, issues relating to costs were referenced in the records. *See Foster*, 4 F. Supp. 3d at 984 ("Choosing a treatment for a prisoner based on cost and not efficacy is evidence of deliberate indifference.") (citing *Gulley v. Ghosh*, 864 F. Supp. 2d 725, 729 (N.D. Ill. 2012)).

- 13 -

Nevertheless, any potential monetary harm to Defendants is limited. Even though Wexford would be required to purchase the three items so they could be inspected, there was evidence in the record that they could be returned for a refund. *See* IDOC's Exhibit 11 at 18, Dkt. 56. Wexford and the IDOC Defendants have not provided any evidence to contradict this assertion.

Conversely, the harm to Plaintiff would include future injuries, denial of programs and services and potential constitutional violations. Therefore, the Court finds that the preliminary injunction would have little harm on either the IDOC Defendants or Wexford.

The Court also finds a public interest in seeing Plaintiff properly accommodated for his disability, regardless of whether he is incarcerated. *See Foster*, 4 F. Supp. 3d at 984 (finding that Illinois taxpayers, who would be paying for the inmate to see a specialist, "have a vested interest in ensuring that the constitutional rights of its citizens are protected"). The first step in this process is to conduct a security inspection of the prescribed items. If the items are ultimately approved, Plaintiff would be allowed to participate in Dixon Correctional Center's programs and services and safely navigate the prison.

Accordingly, the Court finds that the balance of harms weighs in Plaintiff's favor and would not be adverse to the public interest. Therefore, Plaintiff has satisfied all the requirements necessary for injunctive relief.

## III. CONCLUSION

The Court finds that the IDOC Defendants should be ordered to inspect the requested items for security concerns. In doing so, the Court is not taking away the IDOC Defendant's discretion in making facility related security determinations, but instead is ordering the IDOC Defendants to exercise their discretion to make a security determination in the first place.

Therefore, it is this Court's Report and Recommendation that Wexford be ordered to acquire the following items: (1) an Amigo HD portable desktop magnifier; (2) a task light; and (3) a monocular scope. *See* Plaintiff's Exhibit 15, Dkt. 42-1. The Court has been informed that these items are likely subject to a return policy if the items cannot be used. If that is not the case, Defendants should inform the Court of this development. Once the three items above are acquired, the IDOC Defendants, specifically Dixon's security unit, are ordered to conduct a security inspection for each of the individual items. If the IDOC Defendants determine that any one of these items cannot be approved for a security related reason, they must provide a specific explanation as to the security concern. As it relates to the portable digital magnifier prescribed by Dr. Stelmack, if the IDOC Defendants

ultimately do not approve this item, they should proceed with acquiring and inspecting the Aukey portable video magnifier that Plaintiff was previously issued and authorized to use.

Accordingly, it is this Court's Report and Recommendation that Plaintiff's Motion for a Preliminary Injunction (Dkt. 6) be granted as modified. Any objection to this Report and Recommendation shall be filed by June 28, 2018. Failure to object may constitute a waiver of objections on appeal. *See Provident Bank v. Manor Steel Corp.*, 882 F.2d 258, 260 (7th Cir. 1989).

Dated: June 14, 2018       By:

Iain D. Johnston
United States Magistrate Judge