IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Stephon Woodley, | ) |
|        Plaintiff, | ) ) ) |
|        v. | ) Case No. 18 CV 50050 ) ) Judge Philip G. Reinhard |
| John Baldwin, et al., | ) ) ) |
|        Defendants. | ) |

## ORDER

Defendant Wexford Health Sources, Inc.'s motion to dismiss plaintiff's complaint [33] is denied as to plaintiff's claim pursuant to *Monell* (Count Three). IDOC defendants' partial motion to dismiss plaintiff's complaint [38] is denied as to plaintiff's claims pursuant to the ADA (Count One) and the Eighth Amendment (Count Three).

## STATEMENT-OPINION

**Background**

Plaintiff Stephon Woodley, previously incarcerated at Dixon Correctional Center ("Dixon"), brings this lawsuit pursuant to 42 U.S.C. § 1983 claiming Dixon's warden, the Illinois Department of Corrections ("IDOC"), IDOC's director, IDOC's Americans with Disabilities Act ("ADA") coordinator, and Wexford Health Sources, Inc. ("Wexford"), were deliberately indifferent to his serious medical needs by failing to provide him with specific visual aids. Plaintiff further alleges IDOC refused to provide a reasonable accommodation to his disability in violation of the ADA. Plaintiff's complaint also claims Wexford, the medical service provider at Dixon, maintained a custom, policy, or practice that resulted in a deprivation of plaintiff's constitutional rights.[1]

On April 5, 2018, defendant Wexford filed a motion to dismiss plaintiff's complaint arguing plaintiff has failed to state a claim under theories of *Monell*, and that the applicable two-year statute of limitations bars plaintiff's claims [34].[2] On April 12, 2018, IDOC defendants filed

---

1 On June 6, 2019, plaintiff brought an additional suit against Dr. Ritz, an employee of Wexford, under the same factual background and same legal claim. *See* 19 CV 50136 [1]. On September 12, 2019, Magistrate Judge Johnston granted defendant Wexford's motion to consolidate 19 CV 50136 with this case, 18 CV 50050 (taken by the court as a motion for reassignment under Local Rule 40.4). *See* 18 CV 50050 [94]. Defendant Ritz answered plaintiff's complaint in lieu of a motion to dismiss.
2 The statute of limitations for plaintiff's § 1983 complaint is two years. *Mitchell v. City of Elgin*, 912 F.3d 1012, 1015 (7th Cir. 2019). Wexford argues in its opening brief (but does not address in its reply brief) that plaintiff's claims are barred by the statute of limitations. However, according to the complaint, plaintiff did not exhaust his administrative remedies until 2017. Plaintiff filed his complaint on February 9, 2018. The running of the statute is

a partial motion to dismiss plaintiff's complaint arguing plaintiff failed to exhaust his administrative remedies to adequately bring a claim under the ADA, and defendants were not deliberately indifferent to plaintiff's serious medical needs [38].[3] Both motions have been fully briefed and are now before the court.

**Facts**

According to the relevant portions of plaintiff's complaint, plaintiff suffers from Stargardt's disease, a genetic condition that has left him legally blind. During his stay at Dixon (dating back to 2010), plaintiff was seen by an optometrist who conducted an examination and diagnosed him with macular dystrophy. Plaintiff was given a glass magnifier. Two years later, plaintiff was seen again by the optometrist who concluded that plaintiff's condition had worsened and could no longer be accommodated by a glass magnifier, so the doctor recommended plaintiff be allowed to use a portable digital magnifier. Dixon's ADA coordinator agreed and allowed plaintiff to purchase and use the device. In 2014, the device was replaced by IDOC. Also in 2014, plaintiff was seen at an off-site low vision clinic which confirmed he suffered from macular dystrophy and also diagnosed him with Stargardt's disease. In March 2015, plaintiff visited the clinic again where it was recommended plaintiff receive a light in his cell to aid reading, a small optical monocular scope to help him see in the distance, and a folding cane to assist him in moving around the prison. At a follow-up appointment at Dixon, medical professionals concurred with the clinic's recommendations that he be provided all these visual aids. However, defendants failed or refused to provide plaintiff with the visual aids which were recommended.

In the spring of 2015, plaintiff filed a grievance asking that the prison provide him with the recommended visual aids. After this grievance was denied, plaintiff filed another grievance in December 2015. In March 2016, Dixon officials agreed that the visual aids could be acquired for a security inspection. Despite this, plaintiff did not receive the aids. In July 2016, during a shake-down of plaintiff's cell, the IDOC tactical team broke plaintiff's portable digital magnifier. Plaintiff filed a request for a new magnifier, as well as a grievance and several follow-up petitions over the next month. Defendant Keane (IDOC's ADA coordinator) decided plaintiff's magnifier would not be replaced and provided him with a plastic "sheet" magnifier instead in October 2016. In January 2017, Dixon's new medical director noted that plaintiff's magnifying sheet was, in fact, inadequate to address plaintiff's visual impairment, and recommended to defendant Keane that plaintiff be provided the recommended aids. In February 2017, an ophthalmologist at Dixon concurred that plaintiff needed the visual aids. In March 2017, having still not received the aids, plaintiff filed multiple grievances. Despite the grievances, plaintiff did not receive the aids. Based on this, plaintiff alleges in his complaint that Wexford has a policy and practice of not procuring medical devices for inmates without knowing in advance that they will be approved by prison security, even when the devices have been prescribed by a doctor to address a serious medical need.

---

tolled while a prisoner exhausts his administrative remedies. *Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 518 (7th Cir. 2019). The court does not find Wexford's argument viable and will not address it further.

3 On November 27, 2018, the court ordered the parties to participate in a settlement conference and denied defendants' motions to dismiss without prejudice [72]. As the case did not settle, defendants' motions to dismiss were reinstated on March 18, 2019 [86].

Defendants' failure to provide plaintiff with visual aids to address his condition has impaired his ability to perform the basic activities of everyday living. Due to defendants' refusal to assist him, plaintiff has been unable to participate in Dixon's educational programs. Also, because he cannot read, he has been unable to read his own healthcare records. Defendants' failure to provide plaintiff with the visual aids has caused plaintiff physical injury and has hampered his basic everyday living tasks like personal hygiene, sleeping, and maneuvering around his cell uninjured. The lack of a folding cane and monocular scope for distance vision limits plaintiff's ability to safely navigate around the prison and to take advantage of programs and services like religious services, therapeutic services, and recreation. Defendants' failure to provide visual aids to plaintiff has also compounded plaintiff's visual loss by causing strain and additional damage to his retinas.

Moreover, according to plaintiff's complaint, IDOC has discriminated against plaintiff by passing him over for a position with Dixon Correctional Industries ("DCI"), a vocational program within the prison that provides employment. Inmates who work for DCI are able to earn a wage, develop skills, and qualify for a reduction in their incarceration time. Plaintiff was on the waitlist for a job through DCI for years, while non-disabled inmates who were on the list after him were given positions with DCI. After five years on the waitlist, plaintiff filed a grievance, which was denied. Defendants' claim that no positions were available for plaintiff to fill was untrue.

In his complaint, plaintiff claims defendants' actions and inactions amount to deliberate indifference to his serious medical needs in violation of 42 U.S.C. § 1983, against the individual defendants, including Wexford. Plaintiff further alleges violations of the Americans with Disabilities Act and the Rehabilitations Act against defendant Baldwin and IDOC. Plaintiff's complaint seeks equitable relief and money damages.[4]

**Standard of review**

When evaluating a Rule 12 (b)(6) motion to dismiss, the court must "accept[] all well-pleaded facts as true and draw[] all reasonable inferences in favor of the . . . non-moving parties." *Bonnstetter v. City of Chicago*, 811 F.3d 969, 973 (7th Cir. 2016) (internal citations omitted). "A Rule 12(b)(6) motion challenges the sufficiency of the complaint itself." *Id.* "To state a claim, a complaint must first provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (citing FED. R. CIV. P. 8(a)(2)). "The statement of the claim must sufficiently give 'fair notice of what the ... claim is and the grounds upon which it rests' to the defendants." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To state a

---

4 Plaintiff's request for equitable relief includes the requested visual aids. In response to a motion for preliminary injunction, Magistrate Judge Johnston entered a Report and Recommendation on June 14, 2018, ordering Wexford to acquire an Amigo HD portable desktop magnifier, a task light, and a monocular scope, and for IDOC to conduct a security inspection on each item [62]. The magistrate's report was accepted by this court on July 9, 2018 [64]. On July 24, 2018, the court received a status report from IDOC defendants advising that all three items were ordered, received, approved by security, and released to plaintiff. Because plaintiff received the requested aids, the court disregards plaintiff's prayer for this equitable relief. Plaintiff further requests relief in the form of employment with DCI and credit toward his incarceration (that he argues he would have been awarded if he had been hired by DCI). Since plaintiff is no longer incarcerated at Dixon, this relief is likewise unavailable to plaintiff. Plaintiff's request for "back pay" that he would have been awarded through DCI employment may be considered further in this litigation as money damages.

3

claim for relief, a complaint must provide more than "abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Instead, a plausible claim must include "'factual content' sufficient to allow the court 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Charleston v. Board of Trustees of the University of Illinois at Chicago*, 741 F.3d 769, 772 (7th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**Analysis**

**Defendant Wexford Health Sources, Inc.**

### Plaintiff's *Monell* claim (Count Three)

Defendant Wexford argues plaintiff has failed to state a Section 1983 cause of action against Wexford under a theory of *Monell*. A plaintiff cannot proceed under a Section 1983 claim on a theory of *respondeat superior* liability against an employer like Wexford. *Shields v. Illinois Department of Corrections*, 746 F.3d 782, 790 (7th Cir. 2014).[5] Plaintiff may only proceed against Wexford under the premise that "his injury was caused by a Wexford policy, custom, or practice of deliberate indifference to medical needs, or a series of bad acts that together raise the inference of such a policy." *Id*. at 796; *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Moreover, the policy or practice "must be the direct cause or moving force behind the constitutional violation." *Woodward v. Correctional Medical Services of Illinois, Inc*., 368 F.3d 917, 927 (7th Circ. 2004). Wexford argues plaintiff fails to allege specific facts that would support a *Monell* claim in that all the factual allegations regarding defendant's policies and practices are conclusory and generic and fail to address anyone other than plaintiff. Wexford also argues that because plaintiff alleges only his own medical treatment, it is not reasonable to infer any widespread policy.

Turning to the complaint, plaintiff's development of a *Monell* claim is limited. Plaintiff states "Wexford has a policy and practice of not procuring medical devices for inmates without knowing in advance they will be approved by prison security, even when those devices have been prescribed by a physician to address a serious medical need." [1], para. 39. Plaintiff also asserts that Dixon's healthcare administrators (Wexford) would not purchase his requested visual aids without knowing the IDOC security would approve them (and IDOC refused to approve any visual aids without inspecting them). Plaintiff develops his argument in his response brief by referring to his medical records. He states that his medical records demonstrate that the denial of his visual aids is not a "random event" isolated only as to him, but a part of Wexford's "Collegial Review" process. Wexford responds by arguing any reference to plaintiff's medical records and Wexford's Collegial Review should be stricken as procedurally improper. However, as Wexford points out, while courts generally only consider the four corners of the complaint when ruling on a motion to dismiss under Rule 12(b)(6) (*Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013)), "[m]aterials or elaborations in [a party's] brief opposing dismissal may be considered, so long as those materials or elaborations are 'consistent with the pleadings.'" *Heng v. Heavner,*

---

[5] Defendant Wexford makes an argument that it cannot be held vicariously liable under a theory of *respondeat superior*. Plaintiff states in his response brief he does not seek to hold Wexford liable on the grounds of *respondeat superior*. Therefore, the court need not address this argument.

4

*Beyers & Mihlar, LLC*, 849 F.3d 348, 354 (7th Cir. 2017) (citing *Geinosky v. City of Chicago*, 675 F.3d 743, 745, n. 1 (7th Cir. 2012)). Wexford next argues plaintiff's reference to his medical records and Wexford's Collegial Review are not consistent with plaintiff's complaint. The court disagrees. While plaintiff's complaint does not specifically reference the Collegial Review, plaintiff's position that the Collegial Review process involving recommendations from a prison's medical director through multiple levels of review at Wexford, shows evidence of a corporation policy. The court will not discount plaintiff's references to his medical records or Wexford's Collegial Review.

Wexford goes on to argue that even considering its Collegial Review, plaintiff has failed to state a proper *Monell* claim. Wexford argues plaintiff has not shown that an official policy or widespread custom was the "moving force" behind the alleged constitutional violation as to plaintiff's own experience. Both parties cite to *Grieveson v. Anderson*, 538 F.3d 763 (7th Cir. 2008) in support of their respective positions. The *Grieveson* court held that while "it is not impossible for a plaintiff to demonstrate the existence of an official policy or custom by presenting evidence limited to his experience…what is needed is evidence that there is a true…policy at issue, not a random event." *Id*. at 774. *Grieveson* went on to hold that plaintiff's pleadings, discovery, and affidavits were not enough to show that a widespread unconstitutional practice was in effect at the jail. Therefore, the court affirmed summary judgment on this point. *Id*. at 775. The *Grieveson* court, with the advantage of summary judgment pleadings, made its determination based on a detailed review of documents and discovery. At this early stage of the litigation, and taking into consideration the existence of plaintiff's medical records and Wexford's Collegial Review, the court finds plaintiff has sufficiently stated a *Monell* claim against Wexford to allow the complaint to go forward. The court does not comment on the viability of this claim in future motion practice. Wexford's motion to dismiss [33] is denied.

**IDOC Defendants**

**Plaintiff's ADA claim (Count One)**

In their motion to dismiss, the IDOC defendants first argue plaintiff's allegations regarding his "failure to hire" claim with Dixon Correctional Industries are governed by ADA Article I (not Article II as articulated in the complaint). And because plaintiff has failed to exhaust his administrative remedies by first filing a claim with the Equal Employment Opportunity Commission ("EEOC") (as required under ADA Article I), his claim under the ADA should be dismissed. Plaintiff responds his claim is properly brought under Article II.

First, pursuant to Title I of the ADA, covered employers are prohibited from discriminating against qualified individuals with disabilities in hiring and employment because of their disabilities. 42 U.S.C. § 12112(a). Defendants are correct that before bringing a suit in federal court under the ADA, a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC and follow the administrative procedures. *See* 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5(b); *Wamack v. Windsor Park Manor*, 836 F. Supp. 2d 793, 797 (7th Cir. 2011). However, despite defendants' argument otherwise, the Seventh Circuit has held that Title I of the ADA does not apply to plaintiff "because [plaintiff] is an inmate of the prison, not an employee or job applicant." *Murdock v. Washington*, 193 F.3d 510, 512 (7th Cir. 1999). *See also Neisler v.*

*Tuckwell*, 807 F.3d 225, 228 (7th Cir. 2015) ("[I]t is questionable whether a prisoner working at a prison job qualifies as an 'employee' within the meaning of Title I."); *Starry v. Oshkosh Correctional Institution*, 731 Fed. Appx. 517, 519 (7th Cir. 2018) ("But we have held that the Americans with Disabilities Act does not apply to the employment of prisoners."); *Torres v. Harris*, No. 19-CV-00768-NJR, 2019 WL 4415426, at *2 (S.D. Ill. Sept. 16, 2019) ("The Seventh Circuit has held that the ADA does not apply to the employment of prisoners."). That leaves the court to determine if plaintiff can bring his claim under Title II of the ADA.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The issue, therefore, is whether plaintiff's "failure to hire" claim falls within a denial of "services, programs, or activities." To begin, courts have held that a plaintiff may not bring an employment-discrimination claim under Title II of the ADA. *Brumfield v. City of Chicago*, 735 F.3d 619, 626 (7th Cir. 2013) ("We conclude that Title II unambiguously does not apply to the employment decisions of state and local governments."); *Taylor v. City of Shreveport*, 798 F.3d 276, 282 (5th Cir. 2015) ("Title II does not create a cause of action for employment discrimination."). In *Neisler*, the Seventh Circuit held that Title II of the ADA "does not cover a prisoner's claim that he suffered workplace discrimination on the basis of a disability." *Neisler*, 807 F.3d at 227. The *Neisler* court goes on to express that while the Supreme Court in *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998) (also relied on by plaintiff here), interpreted "services, programs, or activities" to include a prison's vocational programs, this would only be helpful to plaintiff if the court could equate his prison employment with a vocational program. "Title II applies to vocational programs, the Supreme Court explained, because those programs 'theoretically benefit the prisoners.'" *Neisler*, 807 F.3d at 227 (citing *Yeskey*, 524 U.S. at 210). Neisler worked as a stockman in food service during his incarceration, which the court interpreted as work "necessarily to be done in the regular business" of the prison, as opposed to a vocational program more akin to instruction in a trade. *Id*. Because of this, the court found plaintiff did not qualify for relief under Title II of the ADA.

According to plaintiff's complaint, plaintiff was discriminated against while incarcerated at Dixon when passed over for a position with Dixon Correctional Industries. DCI is described as a vocational program offered to select inmates which provides workers with valuable skills, a wage, work experience, and a possible reduction to their sentences. Specifically, the work plaintiff was seeking with DCI was the creation of eyeglass lenses, along with the cleaning, cutting, and packing of the lenses, as well as related clerical and administrative tasks. Defendants focus their argument on the fact that DCI is a prison employer and plaintiff (had he been given the opportunity) would have been compensated for his work. Plaintiff responds by arguing the DCI program goes beyond typical prison employment and that those able to participate in the DCI program "benefit." Plaintiff cites to the description of the Illinois Correctional Industries program (Dixon being a component) which includes as its mission to provide skills, training, rehabilitation, useable skills, and positive work habits. While it could be said that these attributes could be found in "typical" prison employment positions (porter jobs, food service, laundry, maintenance, groundskeeping, etc.), it appears (while not specifically stated) that DCI may be a separate program designed for unique qualifying inmates, with work possibly more akin to the development of a trade than work in the normal course of prison life. While the court acknowledges defendants'

argument that DCI is an employer under the *Neisler* standard and not a "vocational program," at this stage of the litigation, the court accepts plaintiff's characterization of DCI as vocational, leaving open the possibility that plaintiff may maintain a claim of discrimination under Article II of the ADA.[6] Therefore, defendant IDOC's motion to dismiss plaintiff's ADA claim (Count One) is denied.

**Plaintiff's deliberate indifference claim (Count Three)**

Next, IDOC defendants' assert that plaintiff's deliberate indifference claim should be dismissed because (1) they relied on the medical judgment of the medical professionals, and (2) plaintiff was "getting plenty of care" and was merely unhappy with it. Plaintiff responds defendants did not actually defer to medical professionals regarding plaintiff's medical needs, and plaintiff did not receive the "care" at issue in this case – the visual aids.

A claim brought by a prisoner for deliberate indifference must establish "(1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (citing *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011)). "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk." *Id.* (citation omitted). Defendants do not dispute plaintiff suffered from an objectively serious medical condition, which leaves the court to determine if, based on the pleadings, the IDOC defendants were deliberately indifferent to that condition.

The court agrees with plaintiff that he has, at this stage of the proceedings, sufficiently alleged facts to support a claim for relief under the Eighth Amendment. First, as noted in his brief, Wexford's refusal to acquire the visual aids requested by plaintiff was a decision overruled by the IDOC defendants. Plaintiff's complaint demonstrates deliberate indifference to plaintiff's medical need when the IDOC defendants refused to enforce their instructions onto Wexford. And when one of his visual aids broke, the IDOC defendants refused to replace it – despite the medical professional's position that plaintiff was in need of the device. This is enough to adequately plead deliberate indifference to plaintiff's medical need. Second, IDOC defendants' argument that plaintiff was "getting plenty of care" obviously overlooks the allegations in the complaint that numerous visual aids were not provided to plaintiff. Whether these allegations will survive a stricter standard of review down the litigation road is not a question for today. At this stage, plaintiff has sufficiently pleaded a cause of action of deliberate indifference by the IDOC defendants; therefore, IDOC defendants' motion to dismiss Count Three of plaintiff's complaint is denied.

---

6 *See also*, *Positano v. Pennsylvania Department of Corrections*, No. 16-CV-01570, 2018 WL 3521191 (M.D. Penn. May 16, 2018), where plaintiff wished to participate in the prison's canine service provider program, a paid position preparing canines for possible service dogs. The court held: "Because the 'employment' at issue in this case is, at least in part, vocational and the Supreme Court has construed Title II of the ADA to apply to vocational prison programs, *Yeskey*, 524 U.S. at 210, we conclude that [plaintiff] can bring his claim that the DOC excluded him from participating in the program under Title II of the ADA." *Id*. at *9.

**Conclusion**

Defendant Wexford Health Sources, Inc.'s motion to dismiss plaintiff's complaint [33] is denied as to plaintiff's claim pursuant to *Monell* (Count Three). IDOC defendants' partial motion to dismiss plaintiff's complaint [38] is denied as to plaintiff's claims pursuant to the ADA (Count One) and the Eighth Amendment (Count Three).

Date: 11/14/2019 ENTER:

*Philip G. Reinhard*
United States District Court Judge

Electronic Notices. (LC)