IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| STEPHON WOODLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-cv-50050 |
| | ) | |
| JOHN R. BALDWIN, et al., | ) | Hon. Margaret J. Schneider |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT IDOC'S MOTIONS IN LIMINE**

Plaintiff Stephon Woodley, through his attorneys, submits this response in opposition to Defendant Illinois Department of Corrections' Motions in Limine. ECF 240-13.

**ARGUMENT**

IDOC has moved in limine to bar Mr. Woodley from (1) disclosing a damages amount at the end of this case; (2) invoking jurors' sympathy including by references to the parties' wealth, or by explaining why Mr. Woodley did not receive visual aids; (3) requesting damages for medical supplies or lost wages; (4) introducing Dr. Ryan Herrington's expert testimony; and (5) offering evidence or argument referencing any "golden rule" appeal. The Court should deny each motion.

1. **The Court should deny IDOC's Motions in Limine Nos. 1 and 2.**

IDOC argues that Mr. Woodley cannot suggest a specific amount of damages to the jury because he did not provide IDOC a computation of damages or disclose a damages expert. Mr. Woodley has repeatedly itemized his damages for IDOC, to the extent they are computable, and can testify as to his damages.

As disclosed during the discovery process and summarized in Mr. Woodley's November 13, 2023 Demand Letter to IDOC, Mr. Woodley is seeking the following damages:

1

Mr. Woodley explained that without the visual aids, he banged his shins on objects around the prison multiple times per day—usually 2 to 3 times. He received bumps and bruises all along his shins, which were recorded in the medical records introduced at the injunction hearing. Mr. Woodley can explain that with the visual aids, these injuries were virtually eliminated. From March 27, 2015, when Mr. Woodley was denied the aids (*see* ECF 41-1, Ex. 18), until approximately July 24, 2018, when the aids were finally provided to Mr. Woodley (*compare* ECF 65 *with* ECF 68), nearly three years and four months elapsed, or approximately 1,215 days. Mr. Woodley will thus be able to testify that he suffered between 2,400 and 3,600 painful injuries as a result of the defendants' misconduct. We will ask the jury to consider the pain Mr. Woodley suffered from each one of these unnecessary injuries and compensate him accordingly.

Mr. Woodley also described that because he was not provided with the basic visual aids he was forced to live each of those days in a dirty, unhygienic cell and that for lack of visual aids he was also forced to crawl around in the dirty cell to look for anything that might have fallen. Again, we will ask a jury to consider each day that Mr. Woodley was forced to experience this entirely unnecessary humiliation, and to compensate him accordingly.

Mr. Woodley was also unable to take multiple classes going towards a real estate license, and he was unable simply to read anything. Just as he testified at the preliminary injunction hearing, now that he is out Mr. Woodley is actively pursuing a real estate career but the lack of training he was seeking has delayed his efforts and makes starting up more difficult. He will also seek compensation for the emotional damage resulting from simply being unable to read for years, when he was trying to use reading itself to turn his life around—again, entirely unnecessarily.

As to the first category of damages, the jury will determine in the manner it deems appropriate compensatory damages for the intangible/unliquidated damages caused by Mr. Woodley's physical and emotional pain and suffering. Mr. Woodley testified about these damages at his deposition and preliminary injunction, produced all relevant documents, and has provided all possible calculations relevant to these categories of damages: "nearly three years and four months elapsed, or approximately 1,215 days. Mr. Woodley will thus be able to testify that he suffered between 2,400 and 3,600 painful injuries as a result of the defendants' misconduct."

As to damages which are ascertainable by more precise calculation, Mr. Woodley was unable to function with his sight for nearly three years and four months, with estimated lost earnings in excess of $100,000. Mr. Woodley would have earned more money following the period of his incarceration if he could use his sight with visual aids, in the manner he was accustomed to before and after his incarceration. No expert testimony is needed to prove this reality. In fact, expert testimony is unhelpful to the jury if it concerns "a matter which obviously is within the common knowledge of jurors." *Scott v. Sears, Roebuck & Co.*, 789 F.2d 1052, 1055 (4th Cir. 1986); 29 Federal Practice and Procedure (Wright & Miller) § 6265.2 (2d ed. Apr. 2022 update) ("[E]xpert testimony does not help where the jury has no need for an opinion because the jury can easily reach reliable conclusions based on common sense, common experience, the jury's own perceptions, or simple logic.").

To support his argument that he would have earned a higher wage if he had been accommodated, Mr. Woodley will testify about his difficulties reading and writing for studying and correspondence without visual aids. He will testify about his activities and capabilities before prison, in prison once he had visual aids, and after prison. He will testify about the delay in receiving his real estate license because of the period of incarceration without visual aids. The jury can properly infer from that testimony that he would have earned higher wages during and after incarceration if he was able to function at the level he did with visual aids during his entire incarceration.

Mr. Woodley has been deposed on these topics, and in any event, a plaintiff is not limited to the testimony he provided in response to a defendant's questioning during a deposition. Plaintiff's counsel never said "that the only basis for the 'lost wages' claim is Plaintiff's own

3

testimony from his deposition. ECF 239. Plaintiff's counsel confirmed only that Mr. Woodley will testify at trial as to his lost wages.

IDOC does not identify any delay or lack of clarity in presenting evidence of damages that prejudices IDOC. IDOC points only to the general principle that modern discovery seeks to avoid surprise at trial and Federal Rule of Civil Procedure 26(a)(l)(A)(iii), which requires a plaintiff's initial discovery disclosures to include "a computation of each category of damages claimed by the disclosing party." Defendant then points to Rule 37(c)(1), which provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed.R.Civ.P. 37(c)(1). IDOC asserts that Mr. Woodley may not now offer any damages calculations, because Plaintiffs did not first include damages calculations in their Rule 26(a) initial disclosures.

But Mr. Woodley has not violated Rul 26(a)(1). Courts have repeatedly held that damage categories "such as pain and suffering" are simply "not capable of computation" under Rule 26(a)(1)(iii). *Stevens v. DeWitt Cty.*, Ill., No. 11-cv-3162, 2013 WL 819372, at *4 (C.D. Ill. Mar. 6, 2013); *Flair Airlines Ltd. v. Gregor LLC*, No. 18-cv-2023, 2020 WL 5521419, at *1 (N.D. Ill. Feb. 27, 2020) (same).

As for Mr. Woodley's lost wages, he provided at his deposition that he was seeking damages in excess of $100,000. ECF 164-7 at 116–18. He explained how he arrived at that number: without visual aids in prison, his education was put on hold, limiting his income potential upon release from prison. *Id.* at 118. Mr. Woodley indicated unambiguously in his initial Rule 26(a) disclosures that final damages could not be calculated until later in the proceedings. Then, to the extent they were calculable, Mr. Woodley disclosed his damages and computation during

4

discovery. The Court should not find—and Defendant does not identify—any prejudice or surprise arising from Plaintiffs' delayed ability to calculate an exact amount of damages. *See Lakeview Collection, LLC v. Bank of Am.*, 09 C 3933, 2012 WL 13210518, at *3 (N.D. Ill. Dec. 18, 2012) (citing *Malik v. Falcon Holdings*, LLC, No. 10–C–3451, 2011 WL 6841532, at * *3–41 (N.D. Ill. Dec. 29, 2011), then citing *Jonathan Pepper Co., Inc. v. Hartford Cas. Ins. Co.*, 520 F.Supp.2d 977, 981 n.l (N.D. Ill. 2007)).

The Court should deny IDOC's Motions in Limine Nos. 1 and 3.

### 2. The Court should deny IDOC's Motion in Limine No. 2.

IDOC also moves in limine to bar any testimony, rhetoric, or evidence that invokes juror sympathy or passion, including (1) references to the comparative size and financial wealth of the parties, and (2) testimony or evidence explaining why plaintiff did not receive the visual devices.

Mr. Woodley does not intend to introduce evidence comparing his wealth to IDOC's, and does not oppose IDOC's request to that extent. The question of *why* Mr. Woodley was denied his visual aids, however, is central to this case. Damage claims arising from the ADA and RA are not based on strict liability. They require a showing of deliberate indifference by the defendant. IDOC has pressed this point in its proposed jury instructions, and it is a powerful defense to liability. Unless IDOC is willing to waive the ADA's deliberate indifference requirement, the question of *why* IDOC denied Mr. Woodley's visual aids is of central importance. Certainly IDOC cannot both insist on a deliberate indifference standard of liability and then seek to prevent Plaintiff from introducing evidence to prove that that exact point.

At the preliminary injunction hearing, as part of IDOC's defense to its ADA and RA claims, IDOC claimed that the visual aids posed a security risk, and thus were not reasonable. ECF 62 at 2 (describing IDOC's defense at the preliminary injunction hearing). However, IDOC had

5

no evidence to support this assertion, and based on their Motion in Limine No. 2, appears to have abandoned this defense. To the contrary, the evidence in this case overwhelmingly indicates that IDOC employees identified a security rationale as a pretext to deny Mr. Woodley the aids after concluding that they did not want to acquire them because the video digital magnifier cost several hundred dollars. IDOC has no evidence—and should not be allowed to present any argument—that IDOC made a reasonable accommodation for Mr. Woodley's disability. *See* Plaintiff's Motion in Limine No. 2.[1]

Mr. Woodley, on the other hand, should be allowed to present evidence of IDOC's true rationale for denying him accommodations, which was that IDOC did not want to pay for the devices. In order to prevail on his claims under the ADA and RA, Mr. Woodley will present evidence that the prison failed to make reasonable accommodations for his disability, forcing him to blindly navigate the prison and his cell and bang his shins on objects multiple times a day. *See Kiman v. New Hampshire Department of Corrections*, 451 F.3d 274, 289 (1st Cir. 2006) (denial of access includes making access painful or dangerous). As part of his burden, Mr. Woodley must show that timely receipt of the prescribed visual aids would have been a reasonable accommodation, evidenced by the modest cost and availability of the devices.

### 3. The Court should deny IDOC's Motion in Limine No. 4.

IDOC next argues that Dr. Herrington's opinion should be excluded under Rule 702, incorporating "Defendant's motion," which is presumably Wexford's related argument in their

---

[1] Notably, a bare assertion of security concerns is insufficient to defeat a showing of reasonableness. *Chisolm v. McManimon*, 275 F.3d 315, 327 (3d Cir. 2001). Also, making a general statement about "security concerns" would have had the potential to prejudice Mr. Woodley by suggesting that he was dangerous to the prison, when in fact IDOC disclosed no evidence during discovery to support any claim that the visual aids would jeopardize security in any way.

motion for summary judgment. ECF 170 at 1–7. Mr. Woodley incorporates its response to Wexford's arguments as if fully stated herein. ECF 186 at 12–13.

IDOC's arguments, like Wexford's at summary judgment, misconstrue Dr. Herrington's methodology and opinion. Dr. Herrington is a physician with extensive experience in correctional medicine, including Utilization Management. He reviewed the complaint and information about STGD, and he read the "Collegial Consult" document prepared by a Wexford UM nurse for Dr. Ritz regarding the request for approval of Plaintiff's visual aids. ECF 164-3 at 1–2. He offered the opinion (a) that the visual aids would have been appropriate, and (b) that including information about who would pay for them is a "wholesale departure" from accepted medical practice. *Id.* at 3. In offering these opinions, Dr. Herrington essentially put himself in the shoes of a corporate utilization management physician like Dr. Ritz—conducting a very brief review of some medical literature about appropriate visual aids for STGD, and then reviewing the Collegial Consult notes prepared by the Wexford nurse.

IDOC argues that Dr. Herrington's opinions should be excluded since his "standard practice[]" is to review the entire medical file in a case before offering an opinion. ECF 170 at 4–5. But IDOC never says what type of opinion Dr. Herrington was typically asked to provide in those other cases. ECF 239 at 17. In this case, Dr. Herrington's opinion does not involve questions of causation or the standard of care in a conventional medical case, and which meant that his review *could* be substantially narrower—Dr. Herrington worked with the same information as Dr. Ritz during the collegial review. And Dr. Herrington's opinion is limited to Dr. Ritz's conduct.

IDOC also seeks to exclude Dr. Herrington because "Neither the ADA nor RA claims require evidence or testimony to the reasons for why visual devices would be denied, as Dr. Herrington attempted to opine on." *Id.* at 16. This argument is badly wrong on the law: ADA and

7

RA damage claims require proof of deliberate indifference—and deliberate indifference can only be inferred by the particular factual circumstances at issue, including the reasons (or purported reasons) that the defendant acted or failed to act in a particular way. Dr. Herrington, furthermore, offers no ultimate opinions about why Dr. Ritz did not approve the visual aids, one way or another. He opines instead regarding whether Dr. Ritz's conduct appeared to violate the standard of care.

IDOC also argues that Dr. Herrington's opinion should be excluded because it relied on Mr. Woodley's allegations, is irrelevant, and would not be helpful to the jury. *Id.* at 17–18. This Court found that a reasonable jury could find the facts that Dr. Herrington relied on to form his opinion. ECF 201. Dr. Herrington's opinion that the visual aids would have been appropriate, and his opinion about the unusualness of Wexford's notations about financial responsibility for the aids, are relevant to Mr. Woodley's case and will help the jury determine the reasonableness of IDOC's failure to accommodate. Dr. Herrington's opinion will assist the jury in adjudicating whether or not IDOC violated Mr. Woodley's rights, and the jury should be allowed to hear it.

**4.     The Court should deny IDOC's Motion in Limine No. 5.**

Defendants also moved to bar any "testimony, evidence or comment" asking the jury to put themselves in Mr. Woodley's shoes. Such arguments are sometimes called "reptile" or "golden rule" arguments. Numerous district courts have considered motions in limine to bar these arguments, and those district courts have either denied the motion or declined to rule on it. *See, e.g.*, *Shirrell v. Billing*, No. 17-CV-0567-MJR-DGW, 2018 WL 7252824, at *2 (S.D. Ill. May 11, 2018) (denying the motion as "illegible, unnecessary, speculative, overboard, and downright bizarre" and instructing that "Rule 401 will govern the admissibility of the evidence"); *Baxter v. Anderson*, 277 F. Supp. 3d 860, 863–64 (M.D. La. 2017) ("The Court is being asked to rule on

8

abstract and generalized hypotheticals. In the absence of something more specific, the Court is unable and unwilling to grant their motion.").

As an initial matter, the Court should deny Defendants' motion because it is overly broad and speculative. *See Stinebower v. Scala*, 331 F.2d 366, 367–68 (7th Cir. 1964) (recognizing Fed. R. Civ. P. 7(b)(1)'s particularity requirement for motions). Second, the Court should deny the motion because Defendants seek to preclude "trial tactics" rather than specific evidence, which is not the purpose of a motion in limine. Motions in limine permit the district court to eliminate evidence "that clearly ought not be presented to the jury," because it is "inadmissible for any purpose." *Jonasson v. Lutheran Child and Family Services*, 115 F.3d 436, 440 (7th Cir.1997).

Contrary to the suggestion in defendants' brief, "golden rule" arguments are not inadmissible for any purpose. For one, Golden Rule arguments are permissible on the question of liability. *Shroyer v. Kaufmann*, 426 F.2d 1032, 1034 (7th Cir. 1970) (citations omitted); *see also Burrage v. Harrell*, 537 F.2d 837, 839 (5th Cir. 1976) (finding that argument related to the reasonableness of the defendants' actions under emergency conditions was not an impermissible "Golden Rule" argument). If IDOC pursues any kind of contributory negligence theory, jurors may properly place themselves in Mr. Woodley's shoes to determine liability.

Rather than apply a bright-line rule, in the Seventh Circuit, courts consider "the nature of the remarks, their number and repetition," and whether "in light of the record as a whole . . . there was a deliberate appeal to the jury to substitute sympathy for judgment." *Shroyer v. Kaufmann*, 426 F.2d 1032, 1034 (7th Cir. 1970); *Spray-Rite Serv. Corp. v. Monsanto Co.*, 684 F.2d 1226, 1246 (7th Cir. 1982), *aff'd*, 465 U.S. 752 (1984) (finding golden rule argument was harmless error where argument was not repeated and "jury was properly instructed concerning the law it should apply in determining liability and damages"). This is also the rule in many other Circuits and state

9

courts. For example, while a plea to the sympathy of a jury may be improper, appeals to the jurors' common sense are entirely proper. *Bankers Tr. Co. v. Publicker Indus., Inc.*, 641 F.2d 1361, 1366 (2d Cir. 1981) (holding that plaintiff's summation was not improper for using the word "you" ten times in six sentences where such statements were not prejudicial but were an appeal to jurors' common sense"); *see also Dotson v. Sears, Roebuck & Co.*, 157 Ill. App. 3d 1036, 1041–42, 510 N.E.2d 1208, 1211 (1987) ("[P]laintiffs' counsel told the jury that a million dollars is certainly substantial, but that horses, paintings and computers are bought and sold for that much. These arguments did not exceed the bounds of fair argument.").

Defendants did not cite any Rule of Evidence in support of their motion, but even if they had, the Court cannot assess relevance or probative value because Defendants did not reference any specific evidence in their motion. Defendant's motion, moreover, incorrectly suggests that the limitations on "golden rule" arguments traditionally apply to witness testimony. *Lund v. Jed Prod. Co.*, 295 F.2d 264, 266 (7th Cir. 1961) (distinguishing *Klotz* and other cases where "the improper allusions were made by counsel for plaintiff" with witness testimony "spoken inadvertently and without improper intent"). The Court should deny IDOC's motion or, in the alternative, decline to rule on it at this time.

## CONCLUSION

For the above reasons, the Court should deny IDOC's Motions in Limine.

Date: April 12, 2024                  Respectfully submitted,

/s/ Maria Makar

Stephen H. Weil
Maria Makar
Loevy & Loevy
311 N. Aberdeen Street
Third Floor

10

Chicago, IL 60607
312-243-5900
makar@loevy.com

*Counsel for Plaintiff*